UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CASSANDRA LEE BROCK, as Administratrix of the
ESTATE OF NOEL X. COLON and Guardian of the
Property of Mercedes Colon,

                             Plaintiff,

                                                        Case # 19-cv-6082

v.

                                                        DECISION AND ORDER

DEP. STEPHANIE LOGSDON, et al.,

                             Defendants.

## INTRODUCTION

Plaintiff Cassandra Lee Brock ("Plaintiff") brings this action as Administratrix of the Estate of Noel X. Colon ("Colon") pursuant to 42 U.S.C. § 1983. ECF No. 1. Defendants moved to dismiss the complaint (ECF No. 5) and in response, Plaintiff filed a motion to amend the complaint (ECF No. 12).

For the reasons that follow, the Court grants Plaintiff's motion to amend in part, denies it in part, and denies Defendants' motion to dismiss as moot.

## BACKGROUND

The Court draws the following facts from the Proposed Amended Complaint (the "Amended Complaint") (ECF No. 12-2) and accepts them as true to evaluate whether amendment would be futile. *Case v. Anderson*, No. 16 CIV. 983 (NSR), 2017 WL 3701863, at *6 (S.D.N.Y. Aug. 25, 2017) ("The central inquiry for the Court when considering a motion to dismiss in tandem with a motion to amend is, therefore, whether the proposed amended complaint can survive the motion to dismiss.").

Plaintiff alleges that she and Colon had lived together in Mt. Morris, New York since 2011, when their daughter was born. ECF No. 12-2 ¶ 14-17. At some point, Colon began abusing

1

Fentanyl on a daily basis. In October 2017, Colon entered a drug rehabilitation program; he graduated on November 1, 2017. *Id.* ¶¶ 50-51. As part of the program, Colon was scheduled to begin attending outpatient narcotics anonymous meetings in Rochester on November 2, 2017. *Id.* ¶ 53.

That day, Colon and Plaintiff's brother Nick Brock ("Brock") used Plaintiff's car to drive to Rochester for the first meeting. *Id.* ¶ 66. Colon and Brock purchased Fentanyl in Rochester. At approximately 9:41 that evening—as they were traveling back to Mt. Morris—Defendant Livingston County Sherriff's Deputy Jerry Pilkerton ("Pilkerton")[1] pulled over Colon's vehicle after a report that it was being driven erratically. *Id.* ¶ 69-71.

Pilkerton approached the passenger-side window of the vehicle and began speaking to Brock, who was the passenger. Defendant Livingston County Sherriff's Deputy Shawn Whitford ("Whitford") joined the conversation. *Id.* ¶ 73. Brock told Pilkerton that he used Fentanyl "about a week ago," and Brock consented to a search of his person, which revealed a bag of heroin in Brock's left sock. *Id.* ¶ 74. Brock was charged with criminal possession of a controlled substance in the seventh degree and was transported to the Livingston County Jail. *Id.* ¶ 76.

Meanwhile, Whitford approached Colon, who was in the driver's seat. *Id.* ¶ 77. Whitford observed that Colon's pupils were constricted and that there were tears rolling down his face. *Id.* ¶¶ 78-79. When Whitford asked Colon to step out of the car, a used heroin bag fell out of the vehicle. *Id.* ¶¶ 80-81. Colon tried to conceal the baggie. *Id.* ¶¶ 87-88. Whitford conducted a pat-down search of Colon and recovered a hypodermic instrument in Colon's left shoe. *Id.* ¶ 82. Whitford asked Colon to remove his shoes and conducted a pat down, which apparently revealed nothing further. Whitford did not ask Colon to remove his socks. *Id.* ¶¶ 90-92. Whitford then

---

[1] The Amended Complaint also refers to this defendant as "Pilkenton." For purposes of this Decision and Order, the Court will use Pilkerton, which is the name included in the caption.

conducted five field sobriety tests, all of which Colon failed. *Id.* ¶ 96. Whitford concluded that Colon's speech was slow and raspy, and that his coordination was poor and impaired. *Id.* ¶ 100.

Colon was arrested for one count of possession of a hypodermic instrument and one count of driving while ability-impaired and was transported to the Livingston County Sheriff's Office. *Id.* ¶ 98. When he arrived at the Livingston County Sheriff's Office, Colon explained to Defendant Livingston County Sherriff Deputy Connor Sanford ("Sanford") that he was addicted to Fentanyl, had used one to two bundles of Fentanyl per day for over a year, had just gotten out of rehab, and was trying to get clean, but had used Fentanyl earlier that evening before attending a narcotics anonymous meeting. *Id.* ¶¶ 107-12.

Sanford performed a Drug Influence Evaluation, which confirmed that Colon was impaired and revealed that there were small track marks, injection marks, and scarring on his back and white residue on his right nostril. *Id.* ¶ 115-16. Sanford concluded "[i]n my opinion as a Drug Recognition Expert, Noel is under the influence of a Narcotic Analgesic and Central Nervous System Stimulant and is unable to operate a vehicle safely." *Id.* ¶ 117.

Colon was handcuffed in the front and transported to the Livingston County Jail, where Defendant William Schwan ("Schwan") and Defendant Amber Pellicane ("Pellicane") searched Colon but did not uncover any Fentanyl.[2]  *Id.* ¶¶ 119-23. Booking was completed by 2:31 a.m. *Id.* ¶ 125. Schwan performed an initial screening report that indicated that Colon had a history of mental illness and Fentanyl dependence but did not note that Colon had needle marks. *Id.* ¶ 127. Schwan did not check off that Colon needed constant watch or medical attention. *Id.* ¶ 128. No "high risks" were noted in the initial screening report. *Id.* ¶ 130. Schwan indicated that Colon

---

[2] According to the Amended Complaint, a review of the car camera recording of the transport to the Livingston County Jail apparently shows Colon attempting to conceal something on his person before arriving at the jail. *Id.* ¶ 139.

was not a suicide risk but Colon did admit to past drug use, outpatient mental health evaluation, and a concern about legal repercussions. *Id.* ¶ 131. Schwan specified that Colon was not under the influence of drugs or alcohol. *Id.* ¶ 132. Colon's property was catalogued and he was placed in a cell, but Colon's socks were apparently left on him. *Id.* ¶¶ 136-37.

Pursuant to New York Department of Corrections and Community Supervision ("DOCCS") policy, supervisory rounds of detainees' cells are required at least every 30 minutes. *Id.* ¶ 180. Throughout the night, Schwan reported that he checked Colon's cell every half hour, although, according to the Amended Comlaint, the video footage reveals that he did not. *Id.* ¶ 181. For example, the log indicates that Schwan completed security checks at 3:01 a.m., 3:46 a.m., 4:12 a.m., 5:25 a.m., and 5:44 a.m., but the video shows him at the booking desk at those times. *Id.* ¶ 181-83. The video shows that he did perform seconds-long supervisory checks at 3:57 a.m. and at 5:06 a.m., and one check at 4:25 a.m. for about a minute and a half. *Id.*

Defendant Stephanie Logsdon ("Logsdon") performed a check at 6:08 a.m. and knocked on the door, but he did not answer and Logsdon noted that Colon appeared to be sleeping. *Id.* ¶ 185. At approximately 6:30 a.m., another officer entered Colon's cell to give Colon his breakfast tray. She tried to wake up Colon but he was not responsive. Upon rolling over Colon, she noticed that Colon's face was blue and there was blood around his nose. *Id.* ¶ 141. There were four Fentanyl wrappers in the cell; one was stuck to Colon's body. *Id.* Jail staff and paramedics attempted resuscitation, but Colon was pronounced dead at the scene from a drug overdose. *Id.* ¶ 143-44.

The Final Report of the New York State Commission of Correction into Colon's death, which is attached as Exhibit C to the Amended Complaint, and which is quoted extensively in the body of the Amended Complaint, concludes that "jail staff failed to conduct an adequate body

search of Colon and that sheriff's patrol deputies failed to properly relay Colon's report of recent drug use to the jail staff." *Id.* ¶ 170. It also concluded that "the jail staff made inadequate supervisory rounds and assessments of an inmate who was arrested for being impaired by a narcotic as Colon was found with obvious post mortem changes when found in his jail cell." *Id.* The Medical Review Board determined that Whitford failed to alert jail staff that drug contraband was found in Colon's sock. *Id.* ¶ 177. The Amended Complaint also alleges that "Colon's recent drug use was not relayed to jail staff." *Id.* ¶ 179. Had it been, "Colon may have been found in need of a higher level of supervision." *Id.*

In her Amended Complaint, Plaintiff sues Whitford, Schwan, Sanford, Pellicane, Logsdon, Pilkerton, and Matthew Polizzi ("Polizzi") alleging: (1) violations of Colon's Fifth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983; (2) violations of Livingston County Jail Policy J38; (3) negligence; (4) wrongful death; and (5) *res ipsa loquitur*. The Court now turns to whether those claims can proceed.

## DISCUSSION

### I. Legal Standard on Motion to Dismiss and Motion to Amend

Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim upon which relief can be granted and Plaintiff responds by moving to amend the complaint pursuant to Rule 15. In deciding a motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007) (quoting another source), and "draw all reasonable inferences in Plaintiff's favor." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially

5

plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"Rule 15(a)(2) instructs that a court 'should freely give leave [to amend] when justice so requires.'" *Willis v. Rochester Police Dep't*, No. 15-CV-6284-FPG, 2018 WL 4637378, at *2 (W.D.N.Y. Sept. 27, 2018) (quoting *Grullon v. City of New Haven*, 720 F.3d 133, 139-40 (2d Cir. 2013)). A court may, however, deny leave to amend where such amendment would be "futile." *Id.* Amendment is futile if the proposed claim "could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002).

"When—as in this case—a motion to amend is filed in response to a pending motion to dismiss, 'a court has a variety of ways in which' to proceed, 'from denying the motion [to dismiss] as moot to considering the merits of the motion [to dismiss] in light of the [proposed] amended complaint.'" *Willis*, 2018 WL 4637378, at *2 (quoting *Conforti v. Sunbelt Rentals, Inc.*, 201 F. Supp. 3d 278, 291 (E.D.N.Y. 2016)). Here, the Amended Complaint substitutes out two John Doe Defendants for named individuals and adds factual allegations contained in DOCCS's final report regarding Colon's death. Otherwise, it is substantially the same as the original complaint. Therefore, the Court will deny the motion to dismiss as moot and address the motion to amend the complaint. The Court will deny the motion to amend with respect to the claims that would be futile and will grant the motion to amend with respect to the claims that would not.

## II. Section 1983 Claims

Plaintiff sues Defendants pursuant to 42 U.S.C. § 1983 for violations of Colon's rights under the "Fifth and Fourteenth Amendments." ECF No. 12-2 ¶ 191. Based on this statement and the factual allegations, the Court construes Plaintiff's § 1983 claim as one for deliberate indifference.

"A claim for deliberate indifference to a pre-trial detainee's serious medical needs is properly analyzed under the Fourteenth Amendment" though the "standard is the same regardless of whether a deliberate indifference claim is brought pursuant to the Eighth or the Fourteenth Amendment." *McConville v. Montrym*, No. 315CV00967MADDEP, 2016 WL 3212093, at *4 (N.D.N.Y. June 9, 2016).

To survive a motion to dismiss, a plaintiff alleging deliberate indifference must satisfy two prongs: an "objective prong" showing that "'the alleged deprivation [was] sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain, existed,'" *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting another source), and a "'*mens rea* prong, or mental element prong—showing that the officer acted with at least deliberate indifference to the challenged conditions.'" *Boston v. Suffolk Cty., New York*, 326 F. Supp. 3d 1, 17-18 (E.D.N.Y. 2018) (quoting *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017)).

In the context of pretrial detainees and in light of the Second Circuit's decision in *Darnell*,

> the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.

*Darnell*, 849 F.3d at 35. "In other words, the 'subjective prong' (or '*mens rea* prong') of a deliberate indifference claim is defined objectively." *Id.* "[A] plaintiff must plead that

7

each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Whitley v. Bowden*, No. 17-CV-3564 (KMK), 2018 WL 2170313, at *5 (S.D.N.Y. May 10, 2018) (quoting *Iqbal*, 556 U.S. at 676).

### a. Official Capacity Claims

Plaintiff has sued Defendants "individually and as employees of the Livingston County Sheriff's Department." ECF No. 12-2 at 1. "[A] § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself." *Coon v. Town of Springfield*, 404 F.3d 683, 687 (2d Cir. 2005). To the extent Plaintiff sues these Defendants in their official capacities under § 1983, she "must show the existence of an officially adopted policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right." *Raghunath v. New York*, No. 14-CV-4218 CBA LB, 2015 WL 4623467, at *4 (E.D.N.Y. July 30, 2015) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Because Plaintiff has not shown any policy or custom, her official capacity claims are dismissed.

### b. Whitford and Sanford

Defendants argue that Plaintiff fails to plausibly allege a sufficiently serious deprivation of medical need and that Whitford and Sanford were sufficiently culpable, *i.e.*, that they knew or should have known of the risk but disregarded it. The Court disagrees.

Plaintiff's original complaint asserts that Defendants should have handcuffed Colon in the front, should have searched Colon better, should have detected the contraband that ultimately resulted in his death, and should have watched him more closely. ECF No. 5-1 at 7; *see* ECF No. 1 ¶¶ 172, 179-84. But the Amended Complaint adds a more critical allegation with respect to Whitford and Sanford: that they failed to relay Plaintiff's serious and perilous condition to jail

staff.³ The Court focuses its analysis on this allegation in the Amended Complaint because it finds that it is the most compelling and the only constitutionally cognizable allegation against Whitford and Sanford.

### i. Objective Prong

"The Constitution does not require an arresting police officer or jail official to seek medical attention for every arrestee or inmate who appears to be affected by drugs or alcohol." *Burnette v. Taylor*, 533 F.3d 1325, 1333 (11th Cir. 2008). Rather, "there generally must be evidence that the officers were aware of the ingestion of large quantities of drugs or other intoxicants which, due to the quantities, pose a serious or life-threatening danger to the arrestee, and/or there were obvious signs of distress from the ingestion." *Bradway v. Town of Southampton*, 826 F. Supp. 2d 458, 471-72 (E.D.N.Y. 2011).

Plaintiff's Amended Complaint sufficiently alleges a serious deprivation of medical need. Plaintiff alleges Whitford and Sanford observed that Colon's speech was slurred, his pupils were dilated, he was uncoordinated, and he failed multiple field sobriety tests. To be sure, courts have found serious deprivations where a plaintiff ingested large quantities of intoxicants and showed "obvious signs of distress." *See Boston*, 326 F. Supp. 3d at 19-20 (concluding, on a summary judgment motion, that ingestion of a large quantity of drugs and signs of distress such as vomiting, sleeping, slurred speech, and unsteadiness constituted a sufficiently serious danger); *McConville*, 2016 WL 3212093, at *2 (concluding, on a motion to dismiss, that "telltale signs of drug overdose and alcohol poisoning, including vomiting, aspiration, confusion, dizziness, drowsiness, impaired coordination, and trouble breathing" were sufficiently serious). Colon even admitted to Whitford

---

³ Whether Sanford—in addition to Whitford—was involved in transporting Colon to the Livingston County Jail, and therefore had contact with jail staff, is not entirely clear. However, at this stage, and based on the information Sanford knew about Colon's condition, the Court will permit the § 1983 claim against Sanford to proceed.

and Sanford that he was addicted to Fentanyl and had abused Fentanyl earlier that evening. *Accord Iacvovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 13 (2d Cir. 2016) (holding that the plaintiff suffered from a serious medical condition after she acknowledged she was under the influence of drugs and had a history of drug abuse upon admission to county jail). And, importantly, Whitford and Sanford found drugs, drug paraphernalia, and scarring consistent with drug use on Colon or in his vicinity, demonstrating the severity of the situation.[4] Although it may not have been clear at the time that Colon would overdose, the constellation of other facts alleged demonstrates that Colon's condition was serious.

### ii. Subjective Prong

Defendants insist that, even if Colon's condition was sufficiently serious, they acted, at most, with negligence in failing to relay his condition to jail staff. Again, the Court disagrees.

"[F]ollowing *Darnell*, the Court is faced with a difficult task. It is called upon to determine, without the benefit of medical expertise, whether an objectively reasonable person in Defendant[s'] position would have known, or should have known, that [their] actions or omissions posed an excessive risk of harm" to the plaintiff." *Boston*, 326 F. Supp. 3d at 21-22 (E.D.N.Y. 2018) (quoting another source).

Here, Plaintiff has plausibly alleged that Whitford and Sanford knew or should have known that their actions posed an excessive risk of harm to Colon. Although Colon was arrested for driving under the influence and possession of a hypodermic needle, Whitford and Sanford failed to inform jail staff of the extent of Colon's intoxication or that, in addition to drug paraphernalia, evidence of recent drug use was also discovered. Indeed, the Medical Report referenced extensively in the Amended Complaint makes clear that neither Whitford nor Sanford

---

[4] Interestingly, Brock *was* placed on constant watch but Colon was not. ECF No. 12-2 at ¶ 165.

communicated any of the following to the Livingston County Jail: (1) that Colon admitted to using Fentanyl that evening; (2) that drugs were found on him; (3) the extent of his intoxication and that and he had failed multiple field sobriety tests; and (4) that marks consistent with drug use were found on his body. Whitford and Sanford were in exclusive possession of this information and the Amended Complaint alleges that they should have known that their failure to apprise jail staff of it could result in harm to Colon.

The Court therefore concludes that Plaintiff has plausibly alleged that an objectively reasonable person in Whitford or Sanford's position would have known, or should have known, that failing to inform jail staff of Colon's condition and history posed an excessive risk of harm to Colon.

### iii. Qualified Immunity

"[U]sually, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion." *McKenna v. Wright*, 386 F.3d 432, 435-36 (2d Cir. 2004) (quoting another source). Consistent with this approach, the Court finds that Whitford and Sanford are not entitled to qualified immunity at this stage.

Qualified immunity applies "unless the official's conduct violated a clearly established constitutional right." *Seri v. Bochicchio*, 374 F. App'x 114, 116 (2d Cir. 2010) (quoting another source). Defendants argue that they are entitled to qualified immunity because there is no recognized constitutional right to a strip search. This argument is misplaced. The Court has concluded that the Amended Complaint plausibly alleges that Whitford and Sanford were deliberately indifferent to Colon's medical need. For the reasons stated above, the law on deliberate indifference was clearly established in the Second Circuit at the time of the alleged incident, and therefore qualified immunity is not available to Whitford or Sanford.

Accordingly, the § 1983 claims against Whitford and Sanford as articulated in the Amended Complaint shall proceed.

    **c.    Schwan and Pellicane**

Plaintiff alleges that Schwan and Pellicane searched Colon at the Livingston County Jail but failed to uncover the drugs apparently secreted on Colon's person. There is no constitutional right to a thorough search. *See Bobadilla v. Lizzaraga*, No. 216CV0226GEBEFBP, 2017 WL 3189981, at *3 (E.D. Cal. July 27, 2017) (finding that allegation that officer "did not conduct an urgent suicide risk assessment or follow up with a routine mental health evaluation . . . . fail[ed] to demonstrate that plaintiff had a serious mental health need or that [the officer] responded to that need with deliberate indifference"); *Pesci v. Budz*, No. 2:12-CV-227-FTM-29, 2012 WL 4856746, at *7 (M.D. Fla. Oct. 12, 2012) ("Thus, to the extent that Plaintiff attributes § 1983 liability upon any Defendant stemming from their alleged failure to search or locate the hoarded pills Plaintiff took in an attempt to commit suicide fails as a matter of law."). Nor is there any allegation that Schwan or Pellicane were indifferent to Colon's medical need. Indeed, as the Amended Complaint establishes, neither were aware of Colon's medical need because Whitford and Sanford failed to relay this information to them.

Plaintiff also alleges that Schwan failed to check Colon's cell regularly in accordance with DOCCS policy and lied about performing checks. Again, however, Plaintiff does not allege that Schwan was indifferent to a medical need that he knew or should have known. Rather, Schwan's failure to check Colon's cell sounds in simple negligence—a claim the Court, as discussed below, finds may proceed.

Accordingly, the § 1983 claims against Schwan and Pellicane are dismissed.

### d. Logsdon

Plaintiff alleges that Logsdon was the Livingston County Jail supervisor at the time of the incident and she performed one check of Colon's cell. These allegations do not establish Logsdon's personal involvement in any constitutional deprivation and the § 1983 claim against her is therefore dismissed. *See Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (mere "linkage in the prison chain of command" does not show personal involvement).

### III. Violation of Livingston County Jail Policy J38

Plaintiff's second cause of action is purportedly for a violation of Livingston County Jail Policy J38, which requires that officers regularly check jail cells. "[A] violation of a DOCCS directive does not state a claim for a constitutional violation under § 1983." *Tuitt v. Chase*, No. 9:11-CV-0776, 2013 WL 877439, at *10 (N.D.N.Y. Jan. 30, 2013). The policy may be used as evidentiary support for another claim—such as the § 1983 claim for deliberate indifference or the negligence claim—but it is not a claim that can stand by itself. Therefore, the claim for a violation of Livingston County Jail Policy J38 is dismissed.

### IV. State Law Claims

The remaining state law claims are for negligence, wrongful death, and *res ipsa loquitur*. ECF No. 12-2 ¶¶ 205-22. Defendants' sole remaining argument regarding these state common law claims is that Plaintiff's notice of claim failed to comply with General Municipal Law § 50-e. Defendants' argument is not persuasive. Defendants do not make any other arguments with respect to these state claims and therefore the Court declines to dismiss them.[5]

---

[5] The Court notes that *res ipsa loquitur* is an evidentiary doctrine. Nevertheless, some courts have treated it as a type of negligence claim. *See Mink Mart, Inc. v. Reliance Ins. Co.*, 12 F. App'x 23 (2d Cir. 2000); *St. Paul Fire & Marine Ins. Co v. City of New York*, 907 F.2d 299 (2d Cir. 1990).

13

## V. Polizzi and Pilkerton

Although Polizzi is named in the caption of the Amended Complaint, he is not mentioned in the body of the complaint or the Amended Complaint. Because there are no factual allegations against Polizzi, the claims against him cannot proceed. *Rahman v. Schriro*, 22 F. Supp. 3d 305, 317 (S.D.N.Y. 2014) ("Where, as here, a plaintiff names a defendant in the caption, but the complaint contains no substantive allegation against the defendant, dismissal of the complaint is appropriate.").

Likewise, the only factual allegation involving Pilkerton is that he conducted the initial stop of Colon. Plaintiff does not challenge the constitutionality of the stop. Therefore, the claims against Pilkerton cannot proceed.

## CONCLUSION

Defendants' motion to dismiss the complaint is DENIED AS MOOT. Plaintiff's motion to amend is GRANTED IN PART and DENIED IN PART.

All claims against Defendants in their official capacities are dismissed with prejudice. The claims lodged against Polizzi and Pilkerton in the Amended Complaint cannot proceed. The claim for violation of Livingston County Jail Policy J38 is dismissed with prejudice. The § 1983 claims against Schwan, Pellicane, and Logsdon are dismissed with prejudice.

The Amended Complaint is now the operative pleading but only the following claims, as articulated in the Amended Complaint, may proceed: (1) § 1983 claims against Whitford and Sanford in their individual capacities; (2) negligence claims against all remaining Defendants; (3) wrongful death claims against all remaining Defendants; and (4) *res ipsa loquitur* claims against all remaining Defendants.

Plaintiff is directed to serve the Amended Complaint on the remaining Defendants. The Clerk's Office is directed to amend the case caption in accordance with this Decision and Order.

IT IS SO ORDERED.

Dated: December 16, 2019
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court