UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CASSANDRA LEE BROCK, as Administratrix
of the ESTATE OF NOEL X. COLON and
Guardian of the Property of Mercedes Colon,

Plaintiff,                                    DECISION AND ORDER

-vs-                                   19-CV-6082-FPG-MJP

DEP. STEPHANIE LOGSGON, et al.,

Defendants.

**Pedersen, M.J.** Presently before the Court is a motion by plaintiff

Cassandra Lee Brock, as Administratrix of the Estate of Noel X. Colon and

Guardian of the Property of Mercedes Colon ("Plaintiff"), for spoliation and

sanctions pursuant to Rules 37(b) and (e) of the Federal Rules of Civil Procedure

("F.R.C.P.").[1] (Not. of Mot., ECF No. 155.[2]) Plaintiff seeks on order granting

adverse jury instructions alleging that Defendants engaged in spoliation by failing

to provide Plaintiff with decedent Noel X. Colon's ("Decedent") "original file" from

the Livingston County Jail ("LCJ"). Further, Plaintiff seeks sanctions in the form

of costs for discovery Plaintiff conducted prior to discovering a document referred

---

[1] Plaintiff also sought to amend the Second Amended Complaint with the present motion, but has since moved to withdraw that portion of the motion, which the Court granted. (Pl.'s Mot. to Withdraw, ECF No. 122; Text Order, Nov. 9, 2021, finding as moot Plaintiff's motion to amend and granting Plaintiff's motion to withdraw, ECF No. 123.)

[2] Plaintiff originally filed this motion as ECF No. 90. However, it was impossible for the Court to decipher to which electronically filed exhibits Plaintiff's counsel was referring in his Declaration due to the manner in which Plaintiff filed the electronic exhibits. For this reason, the Court asked Plaintiff's counsel to provide clarification regarding the exhibits and Plaintiff refiled the attorney declaration and exhibits as ECF No. 155.

to by the parties as the "Chairman's Memorandum" in May 2021, punitive sanctions, and costs and fees associated with making the present motion. (Pl.'s Mem. of Law at 5, ECF No. 155-61.)

The Court is frustrated that the parties could not more succinctly state their positions. Plaintiff's counsel submitted a 161-paragraph declaration[3] (ECF No. 155) and Defendants submitted a 46-page memorandum of law (ECF. No. 120). In the future, efforts to present more concise arguments will be appreciated.

## FACTUAL BACKGROUND

On November 2, 2017, law enforcement stopped a vehicle driven by Decedent because it was being driven erratically. (Decl. of Anthony J. LaDuca ¶ 17, Sept. 8, 2021 ("LaDuca Decl."), ECF No. 90-2.) Law enforcement arrested Decedent incident to the stop, charging him with Criminal Possession of a Hypodermic Needle and Driving While Impaired by Drugs. (*Id.* ¶ 20.) Upon evaluation at the Livingston County Police Headquarters, a Drug Recognition Expert determined that Decedent was under the influence of drugs. (*Id.* ¶ 21.) Decedent was thereafter transported to the LCJ, at which time a deputy completed an "intake questionnaire"[4] and form ADM 330 titled "Suicide Prevention Screening" form

---

[3] In addition to the length of the deposition, it was not in compliance with the Court's Administrative Procedures Guide for Electronic Filing (Dec. 2021) 2(A)(v) "A document created with a word processor, or a paper document, must be converted to Portable Document Format to be electronically filed with the court and must be **text searchable**."

[4] The Court interprets Plaintiff's reference to the "intake questionnaire" to mean the "Initial Screening and Risk Assessment" form ("Initial Screening form"). (Declaration of Jeffrey Hammond ¶ 5, Oct. 22, 2021 ("Hammond Decl."), ECF No. 120-27 ("During the booking process, the booking officer verbally goes through the Initial Screening and Risk

("ADM 330") (*Id.* ¶¶ 24, 27.) Decedent was found dead in his cell approximately three and a half hours after being detained. (*Id.* ¶ 41.)

***Facts Relevant to Plaintiff's Spoliation Claim.***

Plaintiff served a discovery demand titled "Request for Inspection of Premises and Evidence," containing Request 3(f) seeking: "[a]ny other items the Defendants may or will offer at or upon the trial of this matter." (LaDuca Decl. ¶ 33 & Ex. E, ECF No. 120-6; Decl. of Shannon B. O'Neill, Ex. G at 4, Oct. 22, 2021 ("O'Neill Decl."), ECF No. 120-1.) Defendants provided Decedent's police intake file from the LCJ with their initial disclosures pursuant to F.R.C.P. 26 and in response to Plaintiff's Request for Inspection of Premises and Evidence [5]. (LaDuca Decl. ¶¶ 32–33 & Exs. 20 & 21.)

During the booking process at the LCJ, the booking officer verbally reviewed the Initial Screening Form and ADM 330 with Decedent. (Hammond Decl. ¶ 5, ECF No. 120–27.) Decedent's responses were entered into the computer and saved to the LCJ's jail management system, which electronically stores records for each inmate. (*Id.* ¶ 7.) Once the forms are completed and saved on the system they cannot be modified. (*Id.* ¶ 8 & Ex. B.) The booking officer then printed the forms for the inmate to sign. (*Id.* ¶ 9.) The only difference that could exist between the

___

Assessment Questionnaire and the Suicide Prevention Screening Questionnaire with the inmate."))

[5] Plaintiff contends that "Defendants offered Mr. Colon's original records in their Initial Disclosures and in response to Plaintiff's Request for Inspection of Premises and Evidence." (LaDuca Decl. ¶¶ 32–33.) Defendants' Initial Disclosures do not make any reference to Decedent's "original records." (O'Neill Decl. ¶ 18 & Ex. B at 3–4.)

completed electronic forms and the printed forms is Decedent's signature on the printed forms. (*Id*. ¶ 10.)

Plaintiff contends that upon review of Decedent's file, counsel discovered that it contained incomplete and/or missing documents. (LaDuca Decl. ¶¶ 33–35; Pl.'s Mem. of Law at 5.) This included Decedent's ADM 330 and Initial Screening forms, which do not contain Decedent's signature. (LaDuca Decl. ¶ 35 & Exs. 22 & 23.) Plaintiff's counsel reviewed video footage of Decedent's interactions with a deputy who finished the Decedent's intake process, including completing an "intake questionnaire" and form ADM 330, and "noticed that [Decedent] signed multiple documents." (*Id*. ¶¶ 27, 35.)

Plaintiff claims that Defendants engaged in spoliation because she was not provided with Decedent's original file, including the signed versions of forms ADM 330 and the Initial Screening, and seeks the following adverse jury instruction: "that the jury is to assume Mr. Colon was under the influence of fentanyl when he was booked into LCJ and that LCJ personnel knew he was under the influence of fentanyl." (*Id*. ¶ 46; Pl.'s Mem. of Law at 18, ECF No. 90-1.)

In addition, Plaintiff contends that also missing from Decedent's file was the "Original Accusatory Information(s)," including the (1) Original Accusatory Information for Driving While Ability Impaired by Drugs, (2) Information/Accusatory Instrument Criminal Possession of a Hypodermic Instrument, and (3) Initial Report to Court of Criminal Case. (LaDuca Decl. ¶ 49.) Due to the alleged spoliation of these documents, Plaintiff seeks the following

adverse jury instruction: "that the booking officer received: 1) Mr. Colon's Original Accusatory Instruments for driving while Ability Impaired by Drugs and probable cause for Mr. Colon's arrest . . .; 2) the Original Accusatory Instruments for Criminal Possession of a Hypodermic Instrument . . .; [and] 3) Initial Report to Court of Criminal Case." (*Id.* ¶ 50.)

> The two accusatory instruments (items (2) & (3) above) were previously produced in response to Plaintiff's FOIL request. (O'Neill Decl. ¶ 44.) Defendants indicated in their discovery response that they "further referred to the 600+ pages of materials produced in FOIL," which included these documents. (*Id.* ¶ 35 & Ex. G, p. 5, ECF No. 120-8.) Further, the LCJ does not create or maintain an "Initial Report to Court of Criminal Case" (item (3) above), it is not provided to the jail, and would not have been in Decedent's file."

Hammond Decl. ¶ 15.

### *Facts relevant to Plaintiff's Motion for Sanctions.*

On December 21, 2016, the Chairman of the Commission of Corrections issued a memorandum regarding "Inmate Supervision/Drug Overdose Precautions" ("Chairman's Memorandum"). (LaDuca Decl. ¶ 5 & Ex. 1.) The Chairman's Memorandum has been publicly available for several years at https://scoc.ny.gov/cm2016.html.  (O'Neill Decl.  ¶ 4, ECF No. 120-1.) The Chairman's Memorandum required "constant watch" or "constant supervision" for "an inmate that has recently consumed, or is suspected of recently consuming, an opiate or opioid." (LaDuca Decl. ¶¶ 5, 121 & Ex. 1.) The Chairman's Memorandum indicates that "constant supervision [requires that] . . . an officer will be charged with continuous monitoring of the inmate's condition and the periodic verification that the inmate is exhibiting signs of life, to include breathing." (*Id.* at Ex. 1, p. 3.)

Plaintiff served her first discovery demand in January 2021, and thereafter sought two extensions of the scheduling order, indicating in her second extension request, dated March 5, 2021, that she was "ready for depositions." (O'Neill Decl. ¶¶ 22–27.) On March 17, 2021, Plaintiff served nine subpoenas for depositions of LCJ employees and one for the Medical Examiner, scheduling the depositions for April 19, 20, and 21, 2021. (*Id.* ¶¶ 27–28.) After the January 2021 discovery demand, which only sought color copies of photographs, Plaintiff served: (1) a Request for Inspection of Premises and Evidence on March 17, 2021; (2) First Request for Notice to Produce on March 17, 2021; (3) Second Request for Notice to Produce on March 24, 2021; and (4) Third Request for Notice to Produce on April 2, 2021. (O'Neill Decl. ¶ 30.)

Request #3[6] contained in Plaintiff's Second Request for Notice to Produce demanded "[a]ny and all Livingston County Jail policies in effect on or before November 3, 2017[,] of the following: (b) The determination of whether the detainee is placed on constant watch, active watch, or general supervision watch." (LaDuca Decl. ¶ 85.) Defendants did not provide the Chairman's Memorandum in response to that demand. (*Id.* ¶ 86.) Plaintiff's father found the Chairman's Memorandum through an Internet search in May 2021. (*Id.* ¶ 91.)

Defendants contend they did not produce the Chairman's Memorandum as part of their initial disclosures because they do not intend to utilize it in defense of

---

[6] A review of Plaintiff's Second Request for Notice to Produce reveals that Plaintiff requested this information in Request #1, not Request #3. (LaDuca Decl. ¶ 85 & Ex. 44; O'Neill Decl. at Ex. E, pp. 6–7.)

this action. (O'Neill Decl. ¶ 17.) Defendants did not produce the Chairman's Memorandum in response to Request Number 1(b) of Plaintiff's Second Request for Notice to Produce because Defendants contend that it is not responsive to the Request as it is neither a policy nor a procedure. (O'Neill Decl. ¶¶ 45–47.)

Sheriff Thomas J. Dougherty is responsible for implementing policies for the LCJ employees.[7] (Decl. of Sheriff Thomas J. Dougherty ¶ 2, Oct. 22, 2021 ("Dougherty Decl."), ECF No. 120-26.) There is a policy-making process that must be followed for any suggestion or change in law to become a policy of the LCJ, including but not limited to, a review of the proposed policy by supervisory members, such as subject matter experts. (*Id.* ¶¶ 4–6.) Thereafter, a proposed policy is sent to the Command Staff of LCJ's Sheriff's Office, comprised of the Chief Deputies, Director, and Undersheriff. (*Id.* ¶ 7.) If the Command Staff approves the proposed policy, it is then provided to Sheriff Dougherty, who has the final authority to approve it. (*Id.* ¶ 11.) The Chairman's Memorandum never went through the policy-making process and is not a policy of the LCJ. (*Id.* ¶ 10.)

To create a rule applicable to correctional facilities, the Commission of Corrections must follow the rule-making process set forth in Section 202 of New York State's Administrative Procedure Act. N.Y. Adm. Pro. § 202. (Defs.' Mem. of Law at 12.) Further, Defendants provided a report from Robert Cuttia, a recently retired Supervisor of the New York State Commission of Corrections, in which Mr.

---

[7] Sheriff Dougherty also indicates that the department's policies and procedures are one and the same. (*Id.* ¶ 3.)

Cuttia explains the process for creating a Minimum Standard.[8] (O'Neill Decl. at Ex. O, p. 9, ECF No. 120-16.) Mr. Cuttia indicates that Chairman's Memoranda do not undergo the rule-making process and are, therefore, not Minimum Standards or additions to Minimum Standards. (*Id*.)

On December 23, 2021, Chief Deputy Yasso emailed the Chairman's Memorandum to all LCJ employees, indicating that "it is in essence an addition to the Minimum Standards and should be followed as such." (LaDuca Decl. ¶ 8 & Ex. 4.)

Plaintiff seeks sanctions "in a punitive manner"[9] (LaDuca Decl. ¶ 122) for Defendants' alleged failure to timely produce the Chairman's Memorandum. (LaDuca Decl. ¶ 121.) Additionally, Plaintiff seeks sanctions based on her allegation that deputies intentionally evaded providing any explanation of "constant watch" during their depositions. (*Id*.)

In the alternative, Plaintiff seeks monetary sanctions for alleged unnecessary time spent "trying to establish negligence without establishing [sic] opioid use leads to constant watch." (*Id*. ¶ 123.) In particular, Plaintiff's counsel claims that he unnecessarily spent ten hours watching a video from the LCJ

---

[8] New York State's Commission of Corrections promulgates the minimum standards for the management of correctional facilities. New York State Commission of Correction, "Mission Statement," https://scoc.ny.gov/index.htm (last visited Jul. 14. 2022).

[9] The Court presumes that Mr. LaDuca is referring to a punitive sanction as discussed by the Second Circuit in *Mackler Prods., Inc. v. Cohen*, 225 F.3d 136, 141 (2d Cir. 2000) and the predecessor case, *Mackler Prods., Inc. v. Cohen*, 146 F.3d 126, 128 (2d Cir. 1998) ("appellate courts have ruled that, in certain sanctions proceedings, the person facing imposition of sanctions should have the benefit of the procedural protections available to a person charged with a crime.")

examining it for how often deputies checked on Decedent. (*Id.* ¶ 124.) Plaintiff also seeks punitive sanctions for the time her counsel spent "trying to establish clear signs of distress that could have been noticed during Mr. Colon's general watch." (*Id.* ¶ 139.) Finally, Plaintiff seeks sanctions for investigating "whether . . . the level and nature of the search [of Decedent] was negligence." (*Id.* ¶ 141.)

Plaintiff seeks costs and fees associated with making this motion. (Pl.'s Mem. of Law at 5.) Defendants seek costs and fees associated with its opposition to Plaintiff's motion pursuant to F.R.C.P. 37(a)(5)(B). (Defs.' Mem. of Law at 9, 16, ECF No. 120.)

## ANALYSIS

In her Notice of Motion, Plaintiff seeks relief under "F.R.C.P. 37(b)(c)." (Not. of Mot., ECF No. 90.) In her Memorandum of Law, Plaintiff seeks relief under "Fed. R. Civ. [sic] 37(b), 37(e), and this Court's inherent authority." (Pl.'s Mem. of Law. at 5, ECF No. 90-1.) Defendants contend that Plaintiff is not entitled to the relief she seeks under F.R.C.P. 37(b) or (e) because those provisions do not apply here. (Defs.' Mem. of Law at 9, 15–16, ECF No. 120.) Rule 37(b) applies when a party fails to comply with a court order, which Plaintiff does not contend occurred in this case. Rule 37(e) addresses a failure to preserve Electronically Stored Information and, again, Plaintiff fails to explain how this provision applies to the motion.

Defendants also contend that Plaintiff cannot seek the requested relief under Rule 37(c), which requires that a party seeking sanctions must demonstrate that the opposing party failed to timely disclose information required by F.R.C.P. 26(a) or (e). (Defs.' Mem. of Law at 17–18.) *See Lee Valley Tools, Ltd. v. Indus.*

*Blade Co.*, 288 F.R.D. 254, 260 (W.D.N.Y. 2013) ("The party seeking Rule 37 sanctions bears the burden of showing that the opposing party failed to timely disclose information.") (citation omitted). The Court finds that F.R.C.P. 26(a) is not applicable because it only requires that a party produce "documents, electronically stored information, and tangible things" that Defendants may use to support their claims or defenses and Defendants have stated that they do not intend to rely upon the Chairman's Memorandum in any respect. (O'Neill Decl. ¶ 17.) Further, the Court agrees that F.R.C.P. 26(e) does not apply here as there is no evidence that Defendants failed to "timely" disclose required information. However, Plaintiff also indicates that she seeks relief pursuant to "this Court's inherent authority" to impose sanctions, which exists separate and apart from the above-stated provisions.

### *Plaintiff has not established that Defendants engaged in spoliation.*

The Second Circuit has provided that "[e]ven without a discovery order, a district court may impose sanctions for spoliation, exercising its inherent power to control litigation." *West v. Goodyear Tire & Rubber, Co.,* 167 F.3d 776, 779 (2d Cir. 1999). "Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses." *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999), *cert. denied*, 528 U.S. 1119 (2d Cir. 2000). "The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge . . . and is

assessed on a case-by-case basis." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001) (citation omitted).

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West,* 167 F.3d at 779. As the Second Circuit has explained:

> [A] party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (citation omitted).

"The party seeking sanctions bears the burden of establishing all elements of a claim for spoliation of evidence." *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 120 (S.D.N.Y. 2008) (citation omitted); *Dilworth v. Goldberg*, 3 F. Supp. 3d 198, 200 (S.D.N.Y. 2014) ("A party seeking spoliation sanctions has the burden of establishing the elements of a spoliation claim by a preponderance of the evidence.") (citations omitted). "Courts have found that actual destruction or loss of relevant documents is a prerequisite for sanctions based on spoliation." *Steuben Foods, Inc. v. Country Gourmet Foods, LLC*, No. 08-cv-561S(F), 2011 WL 1549450, at *3 (W.D.N.Y. Apr. 21, 2011); *La Belle v. Barclay's Cap. Inc.*, No. 19-cv-3800 (JPO)(GWG), 2022 WL 121065, at *7 (S.D.N.Y. Jan. 13, 2022) (denying motion for sanctions where plaintiff failed to meet burden of demonstrating that documents were not produced because they were destroyed).

Importantly, adverse inference sanctions are severe sanctions that should be utilized only in cases of egregious conduct or for situations where the loss of the relevant evidence has so prejudiced the moving party that an adverse inference is necessary to restore the moving party to its pre-loss position. *See, e.g., Residential Funding Corp.,* 306 F.3d at 112 (instructing district court on remand to consider monetary sanctions in lieu of adverse inference instruction if no prejudice is found).

First, Plaintiff has presented no evidence that signed versions of the ADM 330 and Initial Screening forms ever existed, which is a prerequisite for the imposition of sanctions resulting from spoliation. Plaintiff's only offered "proof" that Decedent signed the aforementioned documents was that Plaintiff's counsel "examined the video footage of when Mr. Colon was questioned by Deputy Schwan and [he] noticed that Mr. Colon signed multiple documents." (LaDuca Decl. ¶ 35.) Plaintiff does not and cannot definitely prove that the documents Plaintiff allegedly signed included the ADM 330 and Initial Screening forms. In other words, Plaintiff fails to meet the prerequisite for seeking sanctions for spoliation with respect to these two documents. Nevertheless, the Court will engage in the analysis regarding Plaintiff's entitlement to sanctions for spoliation of all documents allegedly missing from Decedent's file.

It appears Plaintiff contends that she satisfies the first prong of the spoliation analysis by relying on 9 N.Y.C.R.R. § 7022.4(c), which requires a facility to provide a copy of a decedent's "entire correctional medical and mental health record" to the commissioner within three days of the death. (Pl.'s Mem. of Law at

16.) Further, Plaintiff argues 9 N.Y.C.R.R. § 7022.4(d) required the LCJ to certify to the commissioner that it provided a true and accurate copy of the inmate's file. (*Id*.) Plaintiff contends that by not sending the original file to the commissioner, Defendants violated their duty to preserve. (*Id*. 16–17.)

However, the Court is persuaded by Defendants' argument that there is no proof that any of the named Defendants was in control of the ADM 330 and Initial Screening forms when they disappeared, if this is, in fact, what happened. (O'Neill Decl. ¶ 103.) Defendants cited testimony of each named Defendant demonstrating that they either were not involved in completing the forms with Plaintiff, were not on duty when the forms were completed, or were not on duty when Decedent was found in his cell, which is when Plaintiff asserts the duty to preserve arose. (*Id*. ¶¶ 104–08.)

Further, the Court agrees with Defendants that Plaintiff has failed to demonstrate whether the alleged signed documents disappeared prior or subsequent to the time Defendants learned of Decedent's death, which would have allegedly triggered the duty to preserve documents. (Defs.' Mem. of Law at 29.) If they disappeared prior to Decedent's death, no duty to preserve yet existed. If they went missing subsequent to the time Defendants were notified of his death, Plaintiff would have to demonstrate that a duty existed to preserve the documents and that Defendants would have had the responsibility of preserving them.

Plaintiff has failed to make these showings. For these reasons, the Court finds that Plaintiff has failed to satisfy the first prong by a preponderance of the evidence.[10]

With respect to the second prong of the spoliation analysis, a culpable state of mind may be satisfied by a showing that the destruction was undertaken in bad faith or was the result of either gross negligence or simple negligence. *Residential Funding Corp.*, 306 F.3d at 108. However, even "a finding of gross negligence merely permits, rather than requires, a district court to give an adverse inference instruction" or to award other sanctions. *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 162 (2d Cir. 2012). Instead, a "'case-by-case approach to the failure to produce relevant evidence,' at the discretion of the district court, is appropriate." *Id.* at 162, quoting *Residential Funding Corp.*, 306 F.3d at 108.

The Court does not understand Plaintiff's argument regarding Defendants' alleged "culpable state of mind" wherein Plaintiff contends that "[s]ince the duty to preserve is statutorily based pursuant to 9 N.Y.C.R.R. § 7022.4(c), the short time by which Mr. Colon's file went missing, at a minimum, satisfies the 'culpable state of mind' prong," citing to *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003). First, 9 N.Y.C.R.R. § 7022.4(c) simply provides that "[w]ithin three days after the pronouncement of an inmate's death, a copy of the deceased's entire correctional medical and mental health record shall be forwarded to the

---

[10] While case law provides that a party seeking sanctions premised upon spoliation of evidence must satisfy all elements of that claim and the Court has determined that Plaintiff failed to satisfy the first prong, the Court will nevertheless analyze the remaining two prongs.

commission." But this does not demonstrate by a preponderance of the evidence that Defendants, themselves, acted with a culpable state of mind even if the Court was acting under the assumptions that the documents went missing, that Defendants had a duty to preserve, and that they had control over those documents. Further, Plaintiff's citation to *Zubalake* does not provide any clarification or support for Plaintiff's assertions.[11] In sum, the Court finds that Plaintiff has failed to satisfy the second prong necessary for an award of sanctions for spoliation.

As for the third prong, a party may establish relevance by "'adduc[ing] sufficient evidence from which a reasonable trier of fact could infer that 'the destroyed [or unavailable] evidence would have been of the nature alleged by the party affected by its destruction.'" *Harkabi v. SanDisk Corp.*, 275 F.R.D. 414, 420 (S.D.N.Y. 2010) (alterations in original), quoting *Residential Funding Corp.*, 306 F.3d at 109; *Richard Green (Fine Paintings) v. McClendon*, 262 F.R.D. 284, 291 (S.D.N.Y. 2009) (moving party "must present extrinsic evidence tending to show that the destroyed [documents] would have been favorable to their case."

---

[11] Plaintiff also asserts that the testimony of the LCJ deputies demonstrates that the Chairman's Memorandum was withheld with a "culpable state of mind" because they allegedly avoided questions relating to the Chairman's Memorandum. (Pl.'s Mem. of Law at 11.) However, Plaintiff has not asserted that Defendants spoliated the Chairman's Memorandum and does not appear to seek an adverse jury instruction in connection with same, yet confusingly cites the standard for imposing an adverse jury instruction as a sanction. (Pl.'s Mem. of Law at 8.) Instead, Plaintiff asserts that Defendants failed to produce that document and seeks punitive sanctions or compensation for time spent trying to provide negligence in the absence of the Chairman's Memorandum. (Pl.'s Mem. of Law at 11–14.) The Court is unclear as to why Plaintiff engages in the analysis for spoliation with respect to the Chairman's Memorandum and considers Plaintiff's argument in this respect to be misplaced.

(alteration in original and internal citations omitted)); *see also* 24 No. 11 Federal Litigator 17 (2009) ("Showing Relevance of Spoliated Evidence"). "Nonetheless, a court should never impose spoliation sanctions of any sort unless there has been a showing—inferential or otherwise—that the movant has suffered prejudice." *GenOn Mid–Atlantic, LLC v. Stone & Webster, Inc.*, 282 F.R.D. 346, 353 (S.D.N.Y. 2012), *aff'd* No. 11 CV 1299(HB), 2012 WL 1849101 (S.D.N.Y. May 21, 2012).

Plaintiff's main concern appears to be the lack of signatures on the ADM 330 and Initial Screening forms. In addition, with respect to the ADM 330 form, Plaintiff alleges that Defendants failed to ask Decedent the follow-up questions regarding his recent drug use that Plaintiff contends are included in the instructions for completing that form. (LaDuca Decl. ¶ 57.) Further, Plaintiff contends that Defendants failed to comply with LCJ Policy J55, entitled "Drug/Etho Detoxification," which if properly followed, would have documented Decedent's recent consumption of fentanyl. (*Id*. ¶¶ 62–64.)

In addition, Plaintiff claims spoliation occurred because the following documents were not contained in the file provided to her: (1) Original Accusatory Information for Driving While Ability Impaired by Drugs, (2) Information / Accusatory Instrument Criminal Possession of a Hypodermic Instrument, and (3) Initial Report to Court of Criminal Case.

### The ADM 330 and Initial Screening Forms.

With respect to the lack of signatures on the ADM 330 and Initial Screening forms, Plaintiff has failed to demonstrate that a signed version of the ADM 330

and Initial Screening forms are relevant to her claims. Plaintiff is in possession of the documents that show Decedent's responses to the questions contained on the forms asked during booking. Defendants have provided proof that once the deputy entered Decedent's responses to the forms into the computer and saved it, it could not later be altered. The Court fails to see, and Plaintiff does not provide any argument otherwise, how she is prejudiced by not having the signed versions of those forms if they ever existed.

In addition, the Court does not find the ADM 330 form relevant to Plaintiff's claims because the contents of the completed form does not prove that the Decedent had ingested fentanyl when he was booked into jail. The ADM 330 form merely provides that Decedent answered in the affirmative when questioned whether he had "a history of drug or alcohol abuse" and the "comments" section below that question indicates "Past Drug Use." (Hammond Decl. at Ex. C, p. 3, ECF No. 120-27.)

Further, Plaintiff's contention that the ADM 330 form "failed to display the questioning required that would have documented that Mr. Colon had '*recently consumed, or is suspected of recently consuming, an opiate or opioid*'" also lacks merit. (LaDuca Decl. ¶ 64, emphasis in original.) Indeed, Defendants indicated that no follow-up questions or answers exist for either the ADM 330 or Initial Screening forms. (Hammond Decl. ¶ 13.) Defendants provided that the Commission of Corrections does not require the inclusion of any questions on the ADM 330 form regarding recent consumption, or suspected recent consumption, of

an opiate or opioid. (*Id.* ¶¶ 11–12.) In other words, Plaintiff received completed copies of the ADM 330 and Initial Screening forms, albeit without Decedent's signature. (*Id.* ¶ 12.)

### The Accusatory Instruments and Initial Report to Court.

With respect to Plaintiff's assertion that Decedent's file was also missing the (1) Original Accusatory Information for Driving While Ability Impaired by Drugs, (2) Information/Accusatory Instrument Criminal Possession of a Hypodermic Instrument, and (3) Initial Report to Court of Criminal Case, the Court finds this claim to be meritless. Defendants indicated that the first two documents were previously provided in response to Plaintiff's FOIL request and Defendants specifically referred to the FOIL production in response to Plaintiff's Request for Inspection of Premises and Evidence. In addition, with respect to Plaintiff's assertion the Initial Report to Court of Criminal Case was missing from Decedent's file, Defendants demonstrated that the LCJ does not create or maintain that document and it is not provided to the jail. The Court accordingly finds that Plaintiff was in possession of these documents and there was no spoliation.

For the above-stated reasons, the Court finds that any adverse jury instruction would be inappropriate and denies Plaintiff's motion in this respect.

### Plaintiff is not entitled to sanctions related to the disclosure of the Chairman's Memorandum or alleged perjured testimony.

"[A] district court has broad discretion in fashioning an appropriate sanction where the nature of the alleged breach of a discovery obligation is the non-production of evidence." *Fero v. Excellus Health Plan, Inc.*, 502 F. Supp. 3d 724,

751 (W.D.N.Y. 2020) (citation omitted). "When seeking sanctions for failure to produce discovery, the moving party must demonstrate: (1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had 'a culpable state of mind'; and (3) that the missing evidence is 'relevant' to the party's claim or defense such that a reasonable trier of fact could find it would support that claim or defense." *Telesford v. Wenderlich*, No. 16-CV-6130-CJS-MJP, 2020 WL 289300, at *3 (W.D.N.Y. Jan. 21, 2020) (citation omitted).

Here, Plaintiff seeks punitive sanctions for Defendants' alleged withholding of the Chairman's Memorandum and "cover up" of any explanation regarding the standard for constant watch, including asserting that LCJ employees provided misleading answers or evaded questions regarding the application of the constant watch standard during their depositions. In the alternative, Plaintiff seeks compensation for her counsel's time spent reviewing the video of Decedent in his cell, analyzing whether the deputies should have known Decedent was in distress, and whether the search of Decedent for drugs was negligent. (LaDuca Decl. ¶¶ 124–44.)

**The Chairman's Memorandum.**

Plaintiff contends she is entitled to sanctions because Defendants did not produce the Chairman's Memorandum in discovery, which Plaintiff asserts was intentional, and resulted in her counsel spending a large amount of unnecessary time investigating and engaging in discovery in an effort to prove negligence on

Defendants' part. (*Id.* ¶¶ 124–44.) Plaintiff asserts that Defendants should have produced the Chairman's Memorandum in response to Request (1)(b) of Plaintiff's Second Request for Notice to Produce, which asked for "[a]ny and all Livingston County Sheriff's Department's Policies and Procedures in effect on or before November 3, 2017 of the following: (b) The determination of whether the detainee is placed on constant watch, active watch, or general supervision watch." (LaDuca Decl. ¶ 85 & Ex. 44.)

Defendants oppose Plaintiff's request for sanctions, indicating that, given the timing of Plaintiff's service of discovery demands, Plaintiff would not have had the Chairman's Memorandum prior to the April depositions because responses would not have been due until "on and after the April depositions." (O'Neill Decl. ¶¶ 33–34.) Further, Defendants argue that Plaintiff's discovery demands did not cover the Chairman's Memorandum because it "is not a policy, nor is it [a] procedure" or a "rule."[12] (O'Neill Decl. ¶¶ 34, 47, 68, 73–76, 79–80.) Defendants contend that they timely produced the Chairman's Memorandum in response to a subpoena issued to non-party Chief Deputy Jason Yasso, dated June 2, 2021. (*Id.* ¶¶ 62–64 and Ex. N, ECF No. 120-15.)

---

[12] Plaintiff contends that Defendants' counsel stated a patent falsehood at a July 8, 2021, conference with the Court that the Chairmans' Memorandum "was a state rule only and had nothing to do with Livingston County." (Pl.'s Mem. of Law at 6.) However, defense counsel provided the audio from that Court appearance in which she clearly states that the Chairman's Memorandum "is not a rule and certainly not a rule that is within the control of Livingston County." (O'Neill Decl. at Ex. M, oral argument of July 8, 2021, Case Management Conference at 15:20.) Accordingly, Plaintiff's argument in this respect fails.

Finally, Defendants contend that the Chairman's Memorandum does not apply to Decedent because it addresses a situation where "an inmate ingested an excessive amount of opioids immediately prior to a jail admission," not to the present situation where it appears that Decedent was able to hide fentanyl on his person and ingested it once in the jail cell. (O'Neill Decl. ¶¶ 82, 84 & Ex. A.) The issue of Decedent's ultimate cause of death is not to be determined by this Court. However, Defendants have put forth plausible evidence suggesting that the Chairman's Memorandum was not applicable to Decedent's situation.

The Court finds that Plaintiff failed to demonstrate that Defendants neglected to timely produce the Chairman's Memorandum, which obviates the need to discuss the second and third elements necessary to impose sanctions. With respect to timeliness, Defendants contend that their response to Plaintiff's Second Request for Notice to Produce, dated March 24, 2021, would not have been due until after Plaintiff's noticed depositions took place on April 19, 20, and 21, 2021. The Court credits Defendants' argument in this respect. In other words, even if Defendants had produced the Chairman's Memorandum in response to Plaintiff's request for LCJ's "policies and procedures," she would not have received it until after the noticed depositions occurred, which greatly undermines Plaintiff's assertion that had the Chairman's Memorandum been produced, her counsel would not have spent time crafting deposition questions regarding Defendants' alleged negligence. (LaDuca Decl. ¶¶ 125, 133, 143.) Accordingly, the Court finds that Plaintiff is not entitled to sanctions for any time spent preparing for depositions.

Moreover, the Court finds that Request 1(b) did not cover the Chairman's Memorandum and that the Chairman's Memorandum is not a policy, procedure, rule or Minimum Standard. Defendants have demonstrated, through the Declaration of Sheriff Dougherty, that the Chairman's Memorandum did not undergo the policy-making process in place for the LCJ. Indeed, Sheriff Dougherty is tasked with ultimately approving any new policy and he stated that he did not sign the Chairman's Memorandum into policy. (Dougherty Decl. ¶ 10.)

The Court further finds that Defendants timely responded to the first request Plaintiff made for the Chairman's Memorandum, which was in response to the June 2, 2201, subpoena directed to Deputy Yasso. (O'Neill Decl. ¶¶ 62–64.)

Plaintiff points to the email, dated December 23, 2016, sent by Deputy Chief Jason Yasso to "LCSO Jail" in which he indicated that the Chairman's Memorandum "is in essence an addition to the Minimum Standards and should be followed as such." (LaDuca Decl. ¶ 8 and Ex. 4.) First, Deputy Yasso does not indicate that the Chairman's Memorandum is an LCJ policy or procedure, nor would he have the authority deem it a policy or procedure. (*See* Dougherty Decl. ¶ 9.)

Further, Defendants have demonstrated that the Chairman's Memorandum is not a rule or Minimum Standard by citing to the rule-making processes to which the relevant entities must adhere to when promulgating a rule or Minimum Standard, which the Chairman's Memorandum did not undergo. Accordingly, the

Court concludes that the Chairman's Memorandum is neither a rule nor a Minimum Standard.

In addition, even if the Chairman's Memorandum was a policy, procedure, rule or Minimum Standard (which the Court has determined it is not), it does not appear that it would have applied in Decedent's situation as explained by Defendants. In other words, Defendants have presented evidence that Decedent ingested the fentanyl while in custody and that it was not "recently consumed" by Decedent *prior* to his incarceration as the Chairman's Memorandum appears to contemplate.

Based upon the forgoing, the Court finds that punitive sanctions are not warranted. Further, with respect to Plaintiff's alternative grounds for seeking sanctions—*i.e.*, that Plaintiff's counsel would not have wasted his time trying to prove negligence had he known of the existence of the Chairman's Memorandum— the Court finds that the contents of the Chairman's Memorandum does not appear to logically support the requested sanctions. It seems that Plaintiff would still have been required to conduct research on negligence to support and defend this case. For example, Plaintiff's counsel contends that had he known about the Chairman's Memorandum he would not have spent ten hours watching the video recording of Decedent in his holding cell. (LaDuca Decl. ¶ 124.) However, even if Decedent should have been under constant watch, Plaintiff's counsel would likely still have had to review the video to determine whether the video supported any contention that constant watch did, in fact, occur. Similarly, Plaintiff contends that her

23

counsel would not have wasted time "consider[ing] what the deputies should have observed and how it could have prevented Mr. Colon's 'signs of distress.'" (*Id.* ¶ 128.) However, Decedent could still have passed away even if he was on constant watch if the deputies assigned to observe him did not recognize any "signs of distress." Plaintiff's last argument—that counsel wasted time determining whether the search of Decedent was negligent—is also not plausible to this Court as it appears that this would be an issue that would likely arise in a case such as this. In sum, the Court does not find monetary sanctions appropriate here.

### *Plaintiff has failed to produce evidence of perjury obviating an award of sanctions.*

> A court may sanction a party under its inherent power to deter abuse of the judicial process and prevent a party from perpetrating a fraud on the court. *See Knox v. United States*, 2016 WL 4033086, at *4 (D. Conn. July 27, 2016); *Shangold v. Walt Disney Co.*, 2006 WL 71672, at *4 (S.D.N.Y. Jan. 12, 2006). "Sanctions for fraud are warranted if it is established by clear and convincing evidence that [a party] has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate the action." *N.Y. Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharmacy, Inc.*, 432 F. App'x 25, 25 (2d Cir. 2011) (cleaned up). Thus, clear and convincing evidence of bad faith is a prerequisite to an award of sanctions under the court's inherent power.

*Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020). The Supreme Court has stated that courts should utilize their inherent authority to impose sanctions only in rare circumstances. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) ("Because of their very potency, inherent powers must be exercised with restraint and discretion.").

Plaintiff contends that none of the witnesses that were part of the investigation conducted by the Commission of Corrections or that were involved in

this litigation mentioned the Chairman's Memorandum or the standard of constant watch. (LaDuca Decl. ¶¶ 81, 121.) Plaintiff essentially asserts that the witnesses knowingly and intentionally withheld discussing the Chairman's Memorandum during their depositions and engaged in a "cover up" about the application of constant watch for individuals who "*recently consumed, or is suspected of recently consuming, an opiate or opioid.*" (*Id.* ¶¶ 99–119, 122–123, emphasis in original.)

On the other hand, Defendants contend that Plaintiff's assertions the witnesses perjured themselves and engaged in a conspiracy is unfounded and merely speculation. (Defs.' Mem. of Law at 22–23.) Defendants further contend that the excerpts of testimony of the witnesses as contained in Plaintiff's counsel's declaration fail to demonstrate, by clear and convincing evidence, that Defendants engaged in "some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate the action." (*Id.*, citing *Yukos Capital S.A.R.L.*, 977 F.3d at 235.)

After reviewing the excerpts of the witness testimony and arguments cited and raised by both Plaintiff and Defendants, the Court finds that Plaintiff's assertions that the witnesses perjured themselves is based on speculation and fails to meet the requisite standard for awarding sanctions for fraud perpetrated on the Court. Further, the Court does not believe that this is the type of "rare circumstance" where it should utilize its inherent authority to impose sanctions. For these reasons, the Court denies Plaintiff's motion for sanctions in this respect.

Finally, the Court grants Defendants' motion for an award fees and costs associated with opposing Plaintiff's motion.

## CONCLUSION

For the reasons discussed above, the Court **DENIES** Plaintiff's motion for spoliation and sanctions (ECF No. 90), including fees and costs incurred in making this motion. Further, the Court **GRANTS** Defendants' motion for reasonable fees and costs associated with opposing Plaintiff's motion (ECF No. 146.)

Defendants shall have until August 9, 2022, to file proof of reasonable costs and fees. Plaintiff shall have until August 16, 2022, to file any opposition, and Defendants shall have until August 23, 2022, to file any reply. The Court will take the matter under consideration at that time and inform the parties if oral argument is desired, or otherwise decide the amount based on the filed papers.

**IT IS SO ORDERED.**

DATED:      July 26, 2022
            Rochester, New York

MARK W. PEDERSEN
United States Magistrate Judge