UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CASSANDRA LEE BROCK, as Administratrix of the
ESTATE OF NOEL X. COLON and Guardian of the
Property of Mercedes Colon,

                              Plaintiff,

                                                  Case # 19-CV-6082

v.

                                                  DECISION AND ORDER

DEP. STEPHANIE LOGSDON, et al.,

                              Defendants.

**INTRODUCTION**

Plaintiff Cassandra Lee Brock ("Plaintiff") brings this action as Administratrix of the Estate of Noel X. Colon ("Colon") pursuant to 42 U.S.C. § 1983 against, *inter alia*, Defendants Livingston County Sheriff's Deputies Stephanie Logsdon, Amber Pellicane, Connor Sanford, William Schwan, and Shawn Whitford (collectively, "Defendants"). ECF No. 1 (complaint); ECF No. 23 (amended complaint). Presently before the Court are the parties' competing motions for summary judgment, ECF Nos. 140, 141, and Plaintiff's motion to set aside a Decision and Order of Magistrate Judge Mark W. Pedersen, ECF No. 161.

For the reasons that follow, Plaintiff's motion to set aside the decision of Magistrate Judge Pedersen, ECF No. 161, is GRANTED IN PART and DENIED IN PART. Defendants' motion for summary judgment, ECF No. 141, is GRANTED with respect to Plaintiff's federal-law claim. The Court intends to decline to exercise pendant supplemental jurisdiction over the remaining state law claims, but will afford the parties with an opportunity to be heard.[1]

---

[1] If the Court declines to exercise pendant supplemental jurisdiction over the remaining state-law claims, the parties' motions for summary judgment will be denied as moot with respect to the state-law claims.

1

**FACTUAL BACKGROUND**

The Court draws the following facts from the parties' statements of undisputed facts, which, for the most part, are indeed undisputed.[2] The Court will highlight where the parties disagree.

At the time of the relevant events, Plaintiff and Colon had been in a relationship for eight years and shared one daughter. On November 2, 2017, the Livingston County Sheriff's Office was dispatched to a southbound portion of I-390 in the Town of Avon upon a complaint that a black Chevy was driving erratically. ECF No. 140-1 ¶ 4. Livingston County Sheriff's Deputy Pilkenton (a non-party) stopped the vehicle at approximately 9:54 p.m. ECF No. 141-22 ¶ 23. Deputy Whitford arrived on-scene shortly thereafter. Upon approaching the vehicle, Deputy Whitford observed Colon in the driver's seat "having issues" and crying. ECF No. 140-1 ¶ 6. Plaintiff's brother, Nick Brock ("Brock"), was in the passenger seat of the vehicle. ECF No. 141-22 ¶ 25. Colon and Brock were immediately separated. *Id.* ¶ 27. Deputy Pilkenton searched Brock and discovered drugs; Brock was arrested for possession of a controlled substance. *Id.* ¶ 28.

Meanwhile, Deputy Whitford observed that Colon's pupils were constricted. ECF No. 141-22 ¶ 31. Deputy Whitford asked Colon to exit the vehicle and, as he was doing so, Deputy Whitford observed a white glassine bag—like those that typically hold drugs—fall from the vehicle; the bag was empty. *Id.* ¶¶ 32-34. Deputy Whitford performed a pat down search of Colon, wherein he recovered one hypodermic needle concealed in Colon's left shoe. *Id.* ¶ 35. Colon admitted that he did not have a needle card. *Id.* ¶ 36. At 10:03 p.m., Deputy Whitford placed Colon under arrest for possession of a hypodermic instrument. *Id.* ¶¶ 37-38.

---

[2] Plaintiff's statement of undisputed facts is located at ECF No. 140-1; Defendants' statement of undisputed facts is located at ECF No. 141-22. The Court cites both.

After his arrest, Deputy Whitford searched Colon's pockets, socks, shoes, and waistband, *id.* ¶ 40, but Deputy Whitford did not ask Colon to remove his shoes and socks, ECF No. 140-1 ¶ 9. Deputy Whitford did not locate any drugs. ECF No. 141-22 ¶ 41. Deputy Whitford placed Colon in the back of his patrol car and later administered five field sobriety tests; Colon failed four of them. ECF No. 141-22 ¶¶ 42-45. In Deputy Whitford's view, Colon's performance on the tests was consistent with a typical person who is showing signs of possible impairment. *Id.* ¶ 46. Before placing Colon back in the patrol car, Deputy Whitford asked Colon if he had anything illegal on him, and Colon indicated that he did not. *Id.* ¶ 47. Deputy Whitford then handcuffed Colon and transported him to the Sheriff's Office to undergo a drug recognition evaluation. *Id.* ¶ 52. During the transport, Colon was calm, cooperative, and lucid. *Id.* ¶¶ 54-57.

At the Sheriff's Office, Deputy Sanford, a trained Drug Recognition Expert, performed a drug recognition evaluation on Colon, beginning at approximately 11:40 p.m. *Id.* ¶¶ 58, 67. During the evaluation, Colon was cooperative, polite, friendly, and forthcoming. *Id.* ¶ 68. Colon admitted that he was addicted to fentanyl and that he had snorted a bag of fentanyl at approximately 4:30 p.m. that evening. *Id.* ¶¶ 71, 74. Deputy Sanford did not observe any fresh injection sites on Colon's hands; he only observed old scars, which were consistent with Colon's admission that he did not inject fentanyl but snorted it. *Id.* ¶¶ 72-73. In a report transmitted to the District Attorney's Office, Deputy Sanford opined that Colon only showed a slight impairment during the evaluation but he nevertheless concluded that Colon could not operate a vehicle safely. *Id.* ¶¶ 75-76. As a result, Colon was charged with driving while impaired. *Id.* ¶ 77.

At 1:28 a.m., Deputy Whitford transported Colon to the adjacent jail to be booked by Deputy Schwan. *Id.* ¶¶ 85-86. Deputy Whitford sent Colon's arrest report electronically to the jail and hand-delivered Colon's tickets and accusatory instruments to Deputy Schwan. *Id.* ¶ 87.

Deputy Whitford did not tell Deputy Schwan that Colon and Brock had been arrested together, or that Colon had been found with a needle or had consumed drugs earlier that day. *Id.* ¶ 92. However, the paperwork indicated that Colon was accused of consuming drugs, and Deputy Schwan knew that Colon and Brock were in the same car when they were arrested. *Id.* ¶¶ 94, 97.

Colon was searched again at the jail. As part of the search, Colon removed his belt and shoes and non-defendant Deputy Pellicane searched the inside liner of the shoe and underneath it. *Id.* ¶ 101. Colon emptied his pockets and Deputy Schwan patted Colon down, shook his shirt and pant legs, ran his fingers around Colon's waistband, and looked inside Colon's mouth. *Id.* ¶¶ 101-06. No contraband was found. *Id.* ¶ 110.

Deputy Schwan also administered a suicide and risk assessment, which determines whether an inmate should be placed on constant watch. Constant watch would require that an officer continuously monitor Colon. *Id.* ¶ 123. Based on the assessments, Deputy Schwan determined that Colon was not a suicide risk and he placed him on general watch, which required checks every 30 minutes. *Id.* ¶¶ 127-38. Colon was not visibly intoxicated. *Id.* ¶ 147.

Colon was placed in a cell directly in front of the booking officer's desk at 1:48 a.m. *Id.* ¶¶ 151-52. As a result, deputies were able to look into the cell. *Id.* Deputies checked on Colon at the required intervals but did not hear or observe anything out of the ordinary. *Id.* ¶¶ 158-61. At 6:26 a.m., Colon was discovered unresponsive. *Id.* ¶ 162. Empty bags of fentanyl were discovered that morning in Colon's cell. *Id.* ¶ 163.

The medical examiner ruled that Colon's death was the result of fentanyl he had secreted into the jail. *Id.* ¶ 164. The medical examiner indicated that, when Colon overdosed, he entered a respiratory depression, which gave the appearance of sleeping, without any visual evidence of distress. *Id.* ¶¶ 167-69.

# DISCUSSION

## I. Plaintiff's Objections to Magistrate Judge Pedersen's Order

Plaintiff objects to Magistrate Judge Pedersen's order denying Plaintiff's motion for a spoliation instruction and sanctions, and Magistrate Judge Pedersen's award of fees and costs associated with Defendants responding to the motion. ECF No. 161.

### A. Legal Standard

Section 636(b)(1)(A) of Title 28 of the United States Code permits a district judge to "designate a magistrate judge to hear and determine any [nondispositive] pretrial matter" not otherwise expressly excluded therein. *Williams v. Beemiller, Inc.*, 527 F.3d 259, 264 (2d Cir. 2008) (quoting another source). Any party may serve and file objections to a magistrate judge's order on a nondispositive pretrial matter within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(a). Upon consideration of any timely interposed objections and "reconsider[ation]" of the magistrate judge's order, 28 U.S.C. § 636(b)(1)(A), the district judge must modify or set aside any part of the order that "is clearly erroneous or contrary to law." *Williams*, 527 F.3d at 264; *see also* Fed. R. Civ. P. 72(a). However, a party may not assign as error any defect in a magistrate judge's order to which no timely objection has been made. Fed. R. Civ. P. 72(a). "This standard of review is highly deferential, and magistrate judges are afforded broad discretion in resolving nondispositive disputes[;] reversal is appropriate only if their discretion is abused." *Rouviere v. DePuy Orthopaedics, Inc.*, 560 F. Supp. 3d 774, 783-84 (S.D.N.Y. 2021) (citation & internal quotation marks omitted).

### B. Spoliation of Forms

Plaintiff contends that two signed forms were missing from Defendants' disclosures to Plaintiff: Colon's intake questionnaire and suicide risk assessment. As a result, she argues, she is

5

entitled to an adverse jury instruction indicating that Defendants engaged in spoliation. Magistrate Judge Pedersen disagreed, a ruling which the Court cannot find clearly erroneous. *See* ECF No. 160.

The Second Circuit has held that a party seeking an adverse inference instruction based on the destruction of evidence must establish:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (quoting another source).

Plaintiff did not establish these three elements. First, it is not clear whether any *party*—the arresting or booking officers—had an obligation to preserve the printed forms beyond transmitting them to the appropriate jail officials. Second, even though the Court notes with concern that the signed forms went missing so soon after they were signed, there is no evidence that any party acted with a culpable state of mind. Third, it is not clear that the signed forms are truly relevant.

As Magistrate Judge Pedersen correctly concluded, the evidence demonstrates that these questionnaires are completed electronically, printed, and signed by the arrestee. *See* ECF No. 160 at 3. It is undisputed that jail staff asked Colon the relevant questions, entered them into the computer, and printed them out. Colon then signed the forms. Those signed forms are missing. However, Defendants produced the unsigned forms. Although Plaintiff suggests that the information on the missing signed forms may differ from the unsigned forms, the Court finds that any difference would be immaterial and irrelevant.

6

Plaintiff seeks an adverse inference instruction "that the jury is to assume Mr. Colon was under the influence of fentanyl when he was booked into LCJ and that LCJ personnel knew he was under the influence of fentanyl." ECF No. 160 at 4. But no one disputes that Colon was under the influence of fentanyl when he entered the jail. And no one disputes that Deputies Whitford and Schwan were aware that Colon was under the influence of fentanyl when he was arrested and booked. In other words, the parties already agree on what Plaintiff purportedly seeks to establish through the signed forms, so it is unclear how the signed forms would add anything new. *See Hawley v. Mphasis Corp.*, 302 F.R.D. 37, 48 (S.D.N.Y. 2014) ("While prejudice may be presumed upon a showing of bad faith or gross negligence, it is a rebuttable presumption, and the spoliating party has an opportunity to demonstrate a lack of prejudice by, for example, demonstrating that the innocent party had access to the evidence alleged to have been destroyed or that the evidence would not support the innocent party's claims or defenses." (quoting another source)). Accordingly, the Court affirms this part of Magistrate Judge Pedersen's decision.

### C. Sanctions for Failure to Produce Chairman's Memorandum

Plaintiff next argues that Defendants should be sanctioned for failing to produce a December 21, 2016 Memorandum from the Chairman of the New York State Department of Corrections and Community Supervision ("DOCCS") in response to Plaintiff's discovery requests. Magistrate Judge Pedersen disagreed, and his decision is not clearly erroneous.

As explained more fully below, DOCCS sent the Memorandum to local jails advising that inmates who have recently consumed opioids should be put on a constant watch while under the influence of opioids. Defendants did not produce the Memorandum in response to Plaintiff's requests for production of jail policies. However, as Magistrate Judge Pedersen noted, the Memorandum is not necessarily a jail policy. ECF No. 160 at 20. In any event, the Memorandum

is in the public domain and Plaintiff's father located it online. Defendants thereafter, and in response to a different discovery request, produced the Memorandum. *Id.* at 20. Given all of this, the Court agrees with Magistrate Judge Pedersen that sanctions for not initially producing the Memorandum were not warranted.

### D. Award of Fees and Costs

Finally, Plaintiff objects to Magistrate Judge Pedersen's award of fees and costs to Defendants incurred in opposing Plaintiff's motion for spoliation and sanctions. ECF No. 161-2 at 17. On this, the Court agrees with Plaintiff. Magistrate Judge Pedersen's decision awarding fees and costs does not include a rationale for such an award. Indeed, the entirety of Magistrate Judge Pedersen's discussion of Defendants' motion is that he "GRANTS Defendants' motion for reasonable fees and costs associated with opposing Plaintiff's motion." ECF No. 160 at 26. Because the legal and factual rationale for awarding sanctions to Defendants is unclear from Magistrate Judge Pedersen's decision, that portion of the decision is vacated.

In sum, Magistrate Judge Pedersen's Decision and Order is affirmed except insofar as it awards fees and costs.

## II. Motions for Summary Judgment

### A. Legal Standard

Rule 56(a) of the Federal Rules of Civil Procedure states that "the court shall grant summary judgment" if the moving party "shows that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element

8

essential to that party's case, and on which that party will bear the burden of proof at trial."). "Where the moving party demonstrates 'the absence of a genuine issue of material fact,'" *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Celotex Corp.*, 477 U.S. at 323), "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (1986) (emphasis in original). "Only disputes over facts that might affect the outcome of the suit under the governing law" are "material." *Id.* at 248. A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In deciding a motion for summary judgment, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Angulo v. Nassau Cty.*, 89 F. Supp. 3d 541, 548 (E.D.N.Y. 2015) (quoting another source).

"The same standard of review applies when, [as here,] the court is faced with cross-motions for summary judgment." *Clear Channel Outdoor, Inc. v. City of New York*, No. 06 Civ. 8193, 2009 WL 857068, at *12 (S.D.N.Y. Mar. 31, 2009) (citing *Morales v. Quintel Entm't, Inc.,* 249 F.3d 115, 121 (2d Cir. 2001)). In evaluating cross-motions for summary judgment, "[e]ach party's motion must be reviewed on its own merits, and the Court must draw all reasonable inferences against the party whose motion is under consideration." *Id.* (citing *Morales,* 249 F.3d at 121). However, "even when both parties move for summary judgment, asserting the absence of any

9

genuine issues of material fact, a court need not enter judgment for either party." *Morales,* 249 F.3d at 121 (citing *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993)).

**B.      Parties' Motions**

Plaintiff originally moved for summary judgment on her negligence claim only.[3] ECF No. 140. However, she later withdrew her application for summary judgment on the negligence claim against Deputy Sanford and agreed to "withdraw all causes of action against Deputy Sanford."[4] ECF No. 151-2 at 14-15. Plaintiff also voluntarily dismissed the negligence claims against Deputies Logsdon and Pellicane.[5] Defendants have moved for summary judgment on all of the claims asserted against them. ECF No. 141.

The remaining claims are against (1) Deputy Whitford for (a) § 1983 deliberate indifference for failing to communicate Colon's impairment to jail staff, (b) negligence, (c) wrongful death, and (d) *res ipsa loquitur*; (2) Deputy Pellicane for (a) wrongful death and (b) *res ipsa loquitur*; (3) Deputy Logsdon for (a) wrongful death and (b) *res ipsa loquitur*; and Deputy Schwan for (a) negligence, (b) wrongful death, and (c) *res ipsa loquitur*.

**C.      Section 1983 Claim for Deliberate Indifference Against Deputy Whitford**

Deputy Whitford moves for summary judgment on the § 1983 claim for deliberate indifference. Plaintiff alleges that Deputy Whitford was deliberately indifferent to Colon's

---

[3] Plaintiff asks the Court to find in her favor on her negligence claim. In the alternative, Plaintiff asks that the Court find, as a matter of law, that Defendants owed Colon a duty to place him on constant watch. ECF No. 140-3 at 16.

[4] Plaintiff indicated that "if Defendant Sanford can affirm he was unaware of the Memorandum [regarding inmate supervision and drug overdose precautions], then Plaintiff will withdraw all causes of action against Deputy Sanford." ECF No. 151-2 at 14-15. Deputy Sanford declared, under penalty of perjury, that he was "completely unaware of the December 21, 2016 Chairman's Memorandum from the Commission of Correction." ECF No. 158-4 ¶ 2. Accordingly, all claims against Deputy Sanford are dismissed.

[5] Plaintiff is silent, however, about the wrongful death and *res ipsa loquitur* claims against Logsdon and Pellicane.

medical need when he failed to relay to jail staff that a hypodermic needle was discovered on Colon and that Colon had recently used fentanyl, had a history of abuse, and was impaired.

"A claim for deliberate indifference to a pre-trial detainee's serious medical needs is properly analyzed under the Fourteenth Amendment," though the "standard is the same regardless of whether a deliberate indifference claim is brought pursuant to the Eighth or the Fourteenth Amendment." *McConville v. Montrym*, No. 315CV00967MADDEP, 2016 WL 3212093, at *4 (N.D.N.Y. June 9, 2016).

"To prevail on a deliberate indifference claim, a plaintiff must offer evidence that (1) her medical need was 'a condition of urgency,' and (2) that the defendants treated that need with deliberate indifference." *Martinez v. City of New York*, 564 F. Supp. 3d 88, 103 (E.D.N.Y. 2021). In other words, a plaintiff alleging deliberate indifference must satisfy two prongs: an "objective prong" showing that "'the alleged deprivation [was] sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain, existed,'" *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting another source), and a "'*mens rea* prong, or mental element prong—showing that the officer acted with at least deliberate indifference to the challenged conditions.'" *Boston v. Suffolk Cty., New York*, 326 F. Supp. 3d 1, 17-18 (E.D.N.Y. 2018) (quoting *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017)).

> In the context of pretrial detainees and in light of the Second Circuit's decision in *Darnell*, the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.

*Darnell*, 849 F.3d at 35. "In other words, the 'subjective prong' (or '*mens rea* prong') of a deliberate indifference claim is defined objectively." *Id.*

11

Plaintiff argues that there are questions of fact as to both prongs of the deliberate indifference standard. The Court disagrees. Because there is no evidence that Colon's condition was one of urgency or that Deputy Whitford acted intentionally or with reckless disregard, the Court concludes that Deputy Whitford is entitled to summary judgment on the deliberate indifference claim.

### i. Objective Prong

"The Constitution does not require an arresting police officer or jail official to seek medical attention for every arrestee or inmate who appears to be affected by drugs or alcohol." *Burnette v. Taylor*, 533 F.3d 1325, 1333 (11th Cir. 2008). Rather, "there generally must be evidence that the officers were aware of the ingestion of large quantities of drugs or other intoxicants which, due to the quantities, pose a serious or life-threatening danger to the arrestee, and/or there were obvious signs of distress from the ingestion." *Bradway v. Town of Southampton*, 826 F. Supp. 2d 458, 471-72 (E.D.N.Y. 2011).

There is no evidence that Colon ingested large quantities of drugs sufficient to pose a serious or life-threatening danger. Although Colon was arrested for impaired driving, he was not exhibiting any obvious signs of distress. Indeed, no one disputes that the drugs Colon ingested prior to his arrest did *not* pose a serious or life-threatening danger to Colon. Rather, Plaintiff argues that had Deputy Whitford relayed Colon's history with fentanyl to jail staff, Colon would have been placed on constant watch, averting his later overdose. But a deliberate indifference claim requires an objectively serious medical issue and Plaintiff has not proffered any evidence to suggest that Colon was experiencing one.

Plaintiff points to the DOCCS Memorandum, which she says *requires* arresting officers to put arrestees suspected of opioid use on constant watch. ECF No. 151-2 at 9. Although Plaintiff

does not explicitly say so, under her reading of the Memorandum, suspected opioid use would amount to a serious or life-threatening danger for purposes of deliberate indifference.

First, nothing in the Memorandum compels such a reading. To be sure, the Memorandum states that "neither active nor general supervision would suffice to monitor an inmate that has recently consumed, or is suspected of recently consuming, an opiate or opioid. Rather, such inmates must be placed on constant supervision, whereupon an officer will be charged with the continuous monitoring of the inmate's condition and the periodic verification that the inmate is exhibiting signs of life, to include breathing." ECF No. 140-4 at 3. But nowhere does the Memorandum suggest the corollary—necessary for Plaintiff to survive summary judgment on the deliberate indifference claim—that recent opioid use *is* an objectively serious life-threatening medical issue.

Second, even in light of the recommendations in the Memorandum, case law does not require that opioid use, without more, be treated as a serious medical issue for purposes of deliberate indifference claims. On the contrary, case law in this Circuit suggests that for drug use to be sufficiently serious, a detainee must exhibit outward signs of distress. *See Boston*, 326 F. Supp. 3d at 19-20 (concluding, on a summary judgment motion, that ingestion of a large quantity of drugs and signs of distress such as vomiting, sleeping, slurred speech, and unsteadiness constituted a sufficiently serious danger); *McConville*, 2016 WL 3212093, at *2 (concluding, on a motion to dismiss, that "telltale signs of drug overdose and alcohol poisoning, including vomiting, aspiration, confusion, dizziness, drowsiness, impaired coordination, and trouble breathing" were sufficiently serious); *see also Iacvovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 13 (2d Cir. 2016) (summary order) (holding that allegations that plaintiff was vomiting in her toilet and

"otherwise being in distress" due to drug withdrawal, was sufficient to survive motion to dismiss). As explained above, it is undisputed that Colon did not exhibit any such signs of distress.

### ii.  Subjective Prong

Nor are there questions of fact as to the subjective prong. "[F]ollowing *Darnell*, the Court is faced with a difficult task. It is called upon to determine, without the benefit of medical expertise, whether an objectively reasonable person in Defendant[s'] position would have known, or should have known, that [their] actions or omissions posed an excessive risk of harm" to the plaintiff." *Boston*, 326 F. Supp. 3d at 21-22 (E.D.N.Y. 2018) (quoting another source). "Courts have held that officers were aware of, and arguably disregarded, a substantial risk that serious harm would result where they knew that the arrestee ingested drugs and the arrestee exhibited outward signs of distress." *Id.* at *22. Of course, Colon was arrested for impaired driving, but his conduct did not suggest to the officers that he was experiencing distress.[6]

Plaintiff suggests that Defendants' awareness of the Memorandum and its recommendations, and failure to follow those recommendations, satisfies the subjective prong. In other words, Plaintiff says, Deputy Whitford knew or should have known that his failure to relay information about Colon's fentanyl history to jail staff posed an excessive risk of harm to Colon. But Plaintiff's theory backfires. Even assuming the Memorandum is sufficient to create a constitutional duty, as Plaintiff argues, Deputy Whitford explicitly disclaimed knowledge of the Memorandum—a fact which Plaintiff does not dispute. ECF No. 158-5 ¶¶ 3-5. And Plaintiff voluntarily dismissed Deputy Sanford from the case on the same grounds. ECF No. 151-2 at 14-17.

---

[6] In 2009, before the Memorandum was promulgated, the Second Circuit "decline[d] plaintiffs' invitation to adopt a *per se* rule requiring constant supervision for inmate patients exhibiting symptoms of withdrawal from substance abuse in the absence of any supportive authority." *Mayo v. Cnty. of Albany*, 357 Fed. App'x 339, 342 (2d Cir. 2009) (summary order).

14

Accordingly, Defendants' motion for summary judgment is granted with respect to the deliberate indifference claim against Deputy Whitford.

**III.    Pendant Jurisdiction Over State Law Claims**

Having dismissed the only remaining federal claim, and thus the basis for federal question subject matter jurisdiction, the Court turns to whether it should exercise supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367(a).  "[F]ederal courts have supplemental jurisdiction to hear state law claims that are so related to federal question claims brought in the same action as to form part of the same case or controversy under Article III of the United States Constitution."  *See Briarpatch, Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004) (internal quotation marks omitted).  However, a court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered"—judicial economy, convenience, fairness and comity—"will point toward declining to exercise jurisdiction of the remaining state-law claims."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).  Here, those factors appear to weigh against exercising supplemental jurisdiction over the pendant state-law claims.

Judicial economy favors declining jurisdiction because this case has not progressed beyond summary judgment.  The Court acknowledges that this case has been pending in federal court for nearly four years.  The Court has addressed motions to dismiss, discovery disputes, and now motions for summary judgment.  But the Second Circuit has been clear, as a general proposition, that "if [all] federal claims are dismissed *before trial* . . . , the state claims should be dismissed as well."  *Castellano v. Bd. of Trustees*, 937 F.2d 752, 758 (2d Cir. 1991) (emphasis added); *see*

15

*Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) ("In the usual case in which all federal-law claims are eliminated before trial in federal court, the balance of judicial economy, convenience, fairness, and comity, to be considered under the pendent jurisdiction doctrine, will point toward the federal court declining to exercise jurisdiction over the remaining state-law claims."). "Thus, district courts routinely decline to exercise jurisdiction over related state claims once summary judgment is granted for the defendant on all of the federal claims." *Garcia v. Marc Tetro, Inc.*, No. 18-CV-10391 (VEC), 2020 WL 996481, at *3 (S.D.N.Y. Mar. 2, 2020). Since there are no federal claims remaining in this case and it has not proceeded beyond summary judgment, judicial economy appears to favor declining jurisdiction.

The remaining factors also appear to favor declining jurisdiction. Plaintiff may choose to commence an action in state court. *See* CPLR § 205(a) (tolling statute of limitations for state law claims during pendency of federal litigation). The parties' discovery and legal research are transferrable to any such action. And, with only state law negligence and wrongful death claims remaining, the state courts are better positioned to decide the legal issues arising from Plaintiff's state-law theories, some of which do not appear to be clearly settled.

That said, the Second Circuit has cautioned against district courts declining, *sua sponte*, to exercise supplemental jurisdiction over a plaintiff's state-law claims after dismissing the claims that provide the basis for subject matter jurisdiction. *See Catzin v. Thank You & Good Luck Corp.*, 899 F. 3d 77, 82 (2d Cir. 2018) (concluding that district court erred in declining to exercise supplemental jurisdiction without affording parties an opportunity to be heard). Therefore, the Court will afford the parties an opportunity to brief whether the Court should exercise supplemental jurisdiction over the remaining state-law claims.

**CONCLUSION**

For the reasons stated above, Plaintiff's motion to set aside the Decision and Order of Magistrate Judge Pedersen, ECF No. 161, is GRANTED IN PART and DENIED IN PART, in that the Decision and Order is affirmed except as to the award of fees and costs to Defendants. Defendants' motion for summary judgment, ECF No. 141, is GRANTED with respect to Plaintiff's federal-law claim. The Court notifies the parties of its intent to decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims, but affords the parties until December 13, 2022 to file briefs of no more than ten pages addressing whether the Court should exercise supplemental jurisdiction over the remaining state-law claims.

IT IS SO ORDERED.

Dated: December 7, 2022
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York